IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LAWRENCE M. SMITH, and UNITED | § | |
| STATES OF AMERICA, *ex rel* | § | |
| | § | |
| **Plaintiffs,** | § | |
| vs. | § | **Civil Action No. 3:12-CV-4377-M** |
| | § | |
| DEION L. SANDERS, *Individually*, ET AL., | § | |
| | § | |
| **Defendants.** | § | |

FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Pursuant to the standing order of reference dated June 8, 2015 (doc.126), this case has been

referred for pretrial management.  Before the Court is *Defendant Charity Church's Second Motion to*

*Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted*, filed January 6, 2015 (doc.

84).  Based on the relevant filings and applicable law, the motion should be **GRANTED**.

I.  BACKGROUND

On October 31, 2012, Lawrence Smith (Plaintiff), on behalf of the United States of America,  filed

suit against several defendants, including Charity Church (Defendant) for violations of the False Claims Act,

21 U.S.C.A. §§ 3729-3730 (the Act).  (*See* doc. 2.)[1]  He filed a first amended complaint on January 8,

2014, and Defendant moved to dismiss it.  (docs. 13, 56.)  On December 3, 2014, the Court granted

Defendant's motion to dismiss on grounds that Plaintiff had not stated a claim "for fraud and violations of

the False Claims Act, nor for a conspiracy" against it. (doc. 79 at 1.)  It dismissed Plaintiff's claims against

Defendant without prejudice to the filing of an amended complaint that pleaded the who, what, when,

---

[1]Plaintiff also brought claims for violations of the Act against several defendants in a related action entitled
and styled *Smith et. al. v. Wallace et. al.*, 3:13-cv-3106 -M (the Related Action). (*See* doc. 2, Related Action).  The
Related Action was consolidated with this action on May 27, 2015. (doc. 122; Related Action, doc. 46.)

where, and how of the allegedly false or fraudulent statements, and the details of the alleged conspiracy. (*Id*.) Plaintiff filed a second amended complaint but was later granted leave to file a third amended complaint. (docs. 80, 86, 87.)

The third amended complaint asserts claims against Defendant, Deion L. Sanders (Sanders), Damien Lamarc Wallace a/k/a D.L. Wallace (Wallace), Frederick R. Mays a/k/a F.R. Mays a/k/a Bishop F.R. Mays a/k/a F. Ron Mays (Mays), Chazma Jones a/k/a Chazma Dionne Brown (Jones), Carl Gerald Dorvil, Reginald Calhoun, Remond Elder, Jennifer Young, Uplift Fort Worth, CDC (UFW), Prime Time Association (PTA), Jane Doe, and John Doe for violations of the Act. (doc. 89.) Plaintiff alleges that the defendants "committed several acts and omissions that contributed to and resulted in the making of false and fraudulent statements and claims to obtain federal grant funds" through the National School Lunch Program (the School Lunch Program) and Summer Food Service Program (the Summer Food Program)[2]. (*Id*. at 10-12.) Wallace, Sanders, and Mays allegedly used Defendant's property, located at 4400 Panola Avenue, Fort Worth, Texas 76103 (Defendant's Property), to run their fraudulent activities. (*Id*. at 14.)

Plaintiff contends that Defendant was established as a church by Mays and a Champion B. Christian on March 21, 1991. (doc. 89-1 at 1.) Despite being notified by the Texas Secretary of State in December 2007 that it had been involuntarily dissolved, it continued to file periodic reports regarding nonprofit corporations. (*Id*. at 2.) He alleges that Defendant does not hold regular services and does not have a telephone or fax machine, but it holds itself out as an active church. (doc. 89 at 14.) Mays allegedly refers to himself as the Bishop and leader of Defendant, but he is not there regularly. (*Id*.) Mays also has

---

[2]According to Plaintiff, the School Lunch Program and Summer Food Program are federally mandated and funded, and they are administered by the State of Texas through its Department of Agriculture. (doc. 89 at 10-12.)

maintained complete control of Defendant, treated it as an extension of "his own personal being at all times during its existence," and is the only "de facto decision maker" for Defendant. (doc. 89-1 at 4.)

Plaintiff alleges that Defendant and the other defendants "knowingly conspired to make, and actually made, false statements and false claims, in violations of" § 3729(a), for the purpose of wrongfully obtaining federal funds relative to the School Lunch and Summer Food Programs, which were allegedly conducted and administered in part by and through Defendant. (*Id.* at 4.) He alleges that Defendant's Property is the same address used for other defendants who have conspired with Defendant to "instigate, perpetrate and perpetuate" nine "wrongful" schemes.

Plaintiff claims that from November 16, 2005 until September 30, 2007, Defendant, by and through Mays, conspired with Wallace and Jones to make false statements and false claims to obtain federal funds relative to a "Weed and Seed Program" funded by the United States Department of Justice, Office of Justice Programs (the Weed and Seed scheme). (*Id.* at 4.) The program was allegedly administered through the City of Grand Prairie for the provision of classes, "which were misrepresented to have been held by" Wallace on Defendant's Property. (*Id.* at 4-5.)

From May 2008 until January 2010, Defendant allegedly conspired and acted in concert with Sanders, UFW, Wallace, and Jones to "conduct an endeavor known as 'PrimeTimePlayer,'" which was a scheme to defraud high school athletes out of money they paid for a promotion publication that was never published (the PrimeTimePlayer scheme). (*Id.* at 5.)

Plaintiff alleges that from December 2008 until January 2010, Mays conspired and acted in concert with Sanders, UFW, Wallace, and Jones to instigate and perpetuate a scheme in order to fraudulently obtain funds from investors pursuant to a "Revenue Sharing Agreement" in connection with rental income

3

derived from leasing Defendant's Property as the campus of a proposed charter school, Prime Prep

Academy (the Stock and Revenue Sharing scheme).  (*Id*. at 5.)  The investors allegedly relied on the

defendants' "false and fraudulent promises of great returns on their investments."  (*Id*. at 6.)  Plaintiff also

asserts that Defendant, UFW, Wallace, Jones, Mays, and Sanders's scheme was to "derive money,

through false statements and claims," from the United States Departments of Agriculture and Education.

(*Id*.)  He claims this scheme was manifested by the defendants' misrepresentation in a Texas Education

Agency (TEA) 2011 Sixteenth Generation Charter School Application that they had no plans to begin

operating any non-charter program within the next two years.  (*Id*. at 7.)  Plaintiff also asserts that the

defendants wrongfully derived money administered by the TEA and continue to wrongfully derive money

from the State of Texas and the United States.  (*Id*.)

Plaintiff alleges that Defendant, by and through Mays and Wallace, conspired to and attempted to

derive federal funds to be paid to Pinnacle Commercial Property Group, LLC (Pinnacle) "for leasing of"

Defendant's Property from February 11, 2011 until January 12, 2012 (the First Leasing scheme).  (*Id*. at

8.)  He also asserts that there was a conflict of interest in that Mays was simultaneously the chief financial

officer of Pinnacle and the president, registered agent, and "Bishop" of Defendant.  (*Id*.)  Also, Wallace was

the incorporator and chief executive officer of Pinnacle and the executive director of UFW, through which

Prime Prep Academy was established.  (*Id*.)  The intended fraud scheme was allegedly prevented when

Plaintiff alerted the TEA of the scheme, and the leasing agreement was stricken from the pending charter

school application.  (*Id*.)  Plaintiff contends that the deception of this leasing agreement scheme is further

manifested in a commitment letter from Defendant to "Uplift Fort Worth, CDC d/b/a Prime Prep Academy"

which was signed by a "Ronkesha Richardson."  (*Id*. at 9.)  Plaintiff contends that by using the name

4

"Ronkesha Richardson" instead of "Ronkesha Mays" as she used "in every other instance of involvement with the entities at issue in this suit," Mays' daughter sought to prevent association of herself with Mays, who was associated with Pinnacle and the lease agreement. (*Id.*)

From March 11, 2011 until July 1, 2011, the Texas Department of Agriculture allegedly approved Defendant's Property as a feeding site for UFW's Summer Food Program. (*Id.* at 10.) Plaintiff alleges that Defendant, by and through Mays, Wallace, Jones, and UFW, knowingly conspired to make and did make false statements and claims to obtain federal funds in the aggregate amount of $600,189.34 through the Summer Food Program (the 2011 Summer Food scheme). (*Id.*)

Plaintiff alleges that from March 23, 2012 until July 1, 2012, the Texas Department of Agriculture again approved Defendant's Property as a feeding site for UFW's 2012 Summer Food Program. (*Id.*) UFW and Wallace, in connection with Prime Prep Academy, allegedly used the feeding site as an enticement and inducement to enroll students in Prime Prep Academy's summer enrichment camp, which was a for-profit endeavor (the 2012 Summer Food scheme). (*Id.*) Plaintiff contends that the enrichment camp was also conducted at Defendant's Property, and it was at the same dates and times as the Summer Food Program. (*Id.* at 10-11.) He claims that UFW and Wallace advertised that tuition was $35.00 per week per child for the Summer Enrichment Camp, but the Prime Prep Academy students would only be charged $20.00 per week. (*Id.* at 11.) The tuition was to include two nutritious meals per day. (*Id.*)

Plaintiff alleges that from September 5, 2013 until March 1, 2014, Defendant, by and through Mays, Wallace, and Jones, participated in a second leasing scheme whereby they conspired to and did cancel the first leasing agreement between Prime Prep Academy and Defendant that was approved by the TEA as part of the application filed by UFW to create Prime Prep Academy. (*Id.*) Defendant, Wallace,

and Jones then entered into a second leasing agreement which provided that Prime Prep Academy would pay rent to Defendant at the rate of $18,000 per month, although the first agreement provided that no rent would be paid for the first three years (the Second Leasing scheme). (*Id*.) Plaintiff asserts that until the scheme was discovered by new management of Prime Prep Academy, Jones wrote $18,000 in checks that were cashed by her spouse, Wallace. (*Id*. at 11-12.) He discovered that Defendant and Mays were involved with Sanders, PTA, Wallace, Jones, and UFW in the "above-listed fraudulent schemes." (*Id*. at 12.) He also contends that Sanders had been named the spokesperson for the 2011 Summer Food Program. (*Id*.) Finally, Plaintiff asserts that when the wrongful conduct by Sanders, Wallace, Jones, and UFW became publically investigated and established, Defendant did not order, request, or perform an audit to determine the propriety of the defendants' activities regarding the 2011 Summer Food Program. (*Id*.)

In February 2014, Mays, Defendant, and Wallace allegedly encumbered Defendant as collateral in order to obtain a loan seven days after they were served with notice of this lawsuit (the First Encumbrance scheme). (*Id*.)

Finally, Plaintiff contends that on August 27, 2014, Defendant, by and through Mays, Wallace, and Ronkesha Richardson, entered into a Trust Indenture with Sunwest Trust, Inc. to further encumber Defendant in the amount of $771,000 (the Second Encumbrance scheme). (*Id*. at 12-13.) He alleges that Jones wrongfully exercised her powers as notary public for the State of Texas to notarize Wallace's signature. (*Id*. at 13.)

## II.  MOTION TO DISMISS

Defendant moves to dismiss Plaintiff's third amended complaint under Rule 12(b)(6) and Rule 9(b) for failure to state a claim upon which relief can be granted and for failure to meet the heightened pleading

requirements for fraud.  (doc. 84.)[3]

## A.    <u>Rule 12(b)(6)</u>

Rule 12(b)(6) allows motions to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).  Under the 12(b)(6) standard, a court cannot look beyond the face of the pleadings.  *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *see also Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000).  Pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal.  *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992).  The court must accept those well-pleaded facts as true and view them in the light most favorable to the plaintiff.  *Baker*, 75 F.3d at 196.  "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation omitted). Nevertheless, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.* at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions").  The alleged facts must "raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  In short, a complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

A claim has facial plausibility when the plaintiff pleads factual content that allows the court

---

[3]After Defendant moved to dismiss the second amended complaint, Plaintiff was granted leave to file a third amended complaint.  (doc. 87.)  In its order granting leave to amend, the Court expressly stated that it would treat Defendant's motion to dismiss as applying to the third amended complaint.  (*Id.*)

to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (citations omitted). When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570; *accord Iqbal*, 556 U.S. at 678.

**B.    Rule 9(b)**

A dismissal for failure to plead fraud with particularity pursuant to Rule 9(b) is treated the same as a Rule 12(b)(6) dismissal for failure to state a claim. *McCall v. Genentech, Inc.*, 2011 WL 2312280, at *3 (N.D. Tex. June 9, 2011) (citing *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996)). Rule 9(b) contains a heightened pleading standard and requires a plaintiff to plead the circumstances constituting fraud with particularity. *See* Fed. R. Civ. P. 9(b); *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148, 153 (5th Cir. 2010). "[A]rticulating the elements of fraud with particularity requires a plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams v. WMX Techs.*, 112 F.3d 175, 177 (5th Cir. 1997). "Put simply, Rule 9(b) requires 'the who, what, when, where, and how' to be laid out" with respect to a fraud claim. *Benchmark Electronics, Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003).

**C.    False Claims Act**

Here, Plaintiff alleges that Defendant conspired with other defendants to violate subsections (a)(1)(A) and (B) for the purpose of obtaining large payments under the School Lunch and Summer Food

Programs.  (*See* doc. 89 at 2; 89-1 at 4.)  Specifically, he contends that Defendant and the other named

defendants "knowingly conspired to make, and actually made, false statements and false claims" in violation

of § 3729(a).  (doc. 89-1 at 4.)

The Act "is the government's primary litigation tool for recovering losses sustained as the result of

fraud."  *U.S. ex rel. Marcy v. Rowan Companies, Inc.*, 520 F.3d 384, 388 (5th Cir. 2008).  It may be

enforced in suits filed by the Attorney General, or in *qui tam* actions brought by private individuals in the

government's name.  *Graham Cnty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*, 545 U.S.

409, 411–12 (2005) (citing 31 U.S.C. § 3730(a) & (b)(1)).  The Act states, in relevant part:

> **(a) Liability for certain acts.--**
>
> > **(1) in general**.–Subject to paragraph (2), any person who--
> >
> > > **(A)** knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;
> > >
> > > **(B)** knowingly makes, uses, or causes to be made or used, a false record or statements material to a false or fraudulent claim;
> > >
> > > **(C)** conspires to commit a violation of subparagraph (A), (B) ...;
> > >
> > > ...
> > >
> > > is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000 ...

31 U.S.C.A. § 3729(a)(1)(A), (B), (C)[4].

---

[4]On May 20, 2009, Congress enacted the Fraud Enforcement & Recovery Act of 2009 (FERA), which amended the Act and re-designated 31 U.S.C.A. § 3729(a)(3) as 31 U.S.C.A. § 3729(a)(1)(C).  *See* Fraud Enforcement & Recovery Act of 2009, Pub. L. 111-21, § 4(d), 123 Stat. 1617, 1624-25 (2009).  The pre-FERA version of the Act imposed liability on any person who "conspires to defraud the Government by getting a false or fraudulent claim allowed or paid."  31 U.S.C.A. § 3729(a)(3).  The amendments to this subsection only apply to conduct occurring on or after May 20, 2009.  *See* Fraud Enforcement & Recovery Act of 2009, Pub. L. 111-21, § 4(f)(1), 123 Stat. 1617, 1625 (2009).  Because Plaintiff alleges that some conduct occurred before May 2009, the pre-FERA version of this

In order to prove a conspiracy, a plaintiff must show "(1) the existence of an unlawful agreement between defendants to get a false or fraudulent claim allowed or paid by [the Government] and (2) at least one act performed in furtherance of that agreement." *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 193 (5th Cir. 2009)(citing *United States ex rel. Farmer v. City of Houston*, 523 F.3d 333, 343 (5th Cir. 2008)). An agreement may be inferred when it is the natural consequence of the factual allegations. *Id.* at 193-94. Also, the plaintiff must demonstrate that the defendants shared a specific intent to defraud the government. *United States ex rel. Phillips v. L 3 Commc'ns, Integrated, Sys. L.P.*, No. 3:10-cv-1784, 2012 WL 3649699, at *8 (N.D.Tex. Aug. 24, 2012) (citing *Farmer*, 523 F.3d at 343). Rule 9(b)'s particularity requirement applies to conspiracy claims under the Act, and a plaintiff alleging conspiracy to defraud the government must "plead with particularity the conspiracy as well as the overt acts ... taken in furtherance of the conspiracy." *Grubbs*, 565 F.3d at 193. However, because the conspiracy provision lacks a presentment element, presentment of a false claim does not need to be pled or proven in order to prevail on a conspiracy claim under the Act. *Id.*

### 1.     *"PrimeTimePlayer", Second Leasing, and Encumbrance schemes*

Defendant argues that the allegations regarding the "PrimeTimePlayer", the Second Leasing, and the First and Second Encumbrance schemes have nothing to do with making a claim to the federal government at all. (doc. 85 at 6.) It contends that assuming the truth of the allegations regarding those schemes, there are no allegations that Defendant or any other defendant made a false claim to the federal

---

subsection would apply to the schemes involving that conduct. The Fifth Circuit has noted that the difference between the two versions of the statute is "inconsequential," however. *United States ex rel. Spicer v. Westbook*, 751 F.3d 354, 360 fn. 8 (5th Cir. 2014). For ease of reference, only the post-FERA version, 31 U.S.C.A. § 3729(a)(1)(C) is cited, although many of the cases discussed here cite the pre-FERA version.

government in any form.[5] (*Id.*)The complaint alleges that the "PrimeTimePlayer" scheme involved a conspiracy to defraud athletes as opposed to the federal government. (*See* doc. 89-1 at 5 .)   No allegations regarding the Second Leasing scheme suggest that the defendants had an unlawful agreement to defraud the federal government, only that the other defendants intended to defraud a state agency (the TEA). (*See id.* at 11-12.) Plaintiff's allegations that Defendant failed to order or perform an audit regarding the defendants' involvement with the 2011 Summer Food scheme do not show or suggest that Defendant was involved in any false claim or statement made to the federal government. Finally, there are no factual allegations that Defendant engaged in a conspiracy or unlawful agreement with other defendants pursuant to the Encumbrance schemes, or that any false claim or statement was made or used to defraud the government. (*See id.* at 12-13.) Plaintiff has failed to state a claim of conspiracy to defraud the government as to these alleged schemes, and he has failed to plead with particularity the conspiracy as well as the overt acts taken in furtherance of the conspiracy. *See Grubbs*, 565 F.3d at 193; *Lynch v. Cannatella*, 810 F.2d 1363, 1370 (5th Cir. 1987) (dismissing conspiracy claim "in the absence of factual allegations from which a conspiracy ... can reasonably be inferred[.]"); *Dekort v. Integrated Coast Guard Systems*, 705 F.Supp.2d 519, 548 (N.D.Tex. 2010)(dismissing claim under Rules 12(b)(6) and 9(b) where realtor failed to state a claim of conspiracy to defraud the government and to plead with particularity the conspiracy as well as the overt acts taken in furtherance of the conspiracy). Defendant's

---

[5]Defendant also argues that Plaintiff's allegations regarding Defendant's forfeiture fail to state a claim for the reasons it articulates as to the "PrimeTimePlayer", the Second Leasing, and the First and Second Encumbrance schemes . (doc. 85 at 6.) Although those allegations are not part of any alleged scheme and therefore do not appear to be a part of the alleged conspiracy allegations, they fail to state a claim for conspiracy under the Act for the same reasons that the "PrimeTimePlayer", the Second Leasing, and the Encumbrance schemes. To the extent Plaintiff intends to bring a claim based on those allegations, Defendant's motion to dismiss as to those allegations should be granted.

motion to dismiss Plaintiff's claim against it based on these schemes should be granted pursuant to Rules

12(b)(6) and 9(b).

### 2.     Weed and Seed scheme

As to the alleged Weed and Seed scheme, Defendant also argues that because the third amended

complaint provides no details about what false claims were made, how they were made, who made them,

what Defendant did to conspire to make such false claims, and whether the alleged fraud was successful,

it does not meet the requirements of Rules 9(b) and 12(b)(6).  (doc. 85 at 6.)[6]

The third amended complaint alleges that Defendant conspired with Wallace and Jones to make

false statements and claims in order to receive federal funds for the provision of classes under a "Weed and

Seed Program," which were misrepresented to have been held by Wallace at Defendant's Property.

Presentment of a false claim to the federal government need not be pled or proven on a conspiracy charge

under the Act. *See Grubbs*, 565 F.3d at 193.  However, Rule 9(b)'s particularity requirement still applies,

and Plaintiff must allege the existence of an unlawful agreement and an overt act performed in furtherance

of the agreement.  *Id.*; *Dekort,* 705 F.Supp.2d at  548.  Other than their conclusory allegations that

Defendant conspired with Wallace and Jones, and that "it was misrepresented" that classes where held by

Wallace at Defendant's Property, Plaintiff fails to make any allegations regarding an agreement by

Defendant and other defendants to defraud the government or overt acts performed in furtherance of the

agreement.  *See United States ex rel. Westbrook v. Navistar, Inc*., No. 3:10-cv-1578, 2012 WL

10649207 at *8 (N.D.Tex. July 11, 2012)(finding absent the realtor's conclusory pleading that defendants

---

[6]Defendant also argues that Plaintiff's claim regarding this scheme fails as a matter of law because the statute of limitations has run.  (doc. 85 at 6.)  Because the claim is otherwise subject to dismissal, it is unnecessary to reach this argument.

"agreed together" to make false statements that vehicle parts were painted in conformance with applicable standards and included those false statements in claims submitted to the government, there were no allegations of an unlawful agreement among the defendants or allegations of any act performed in furtherance of the agreement). Plaintiff failed to sufficiently plead a conspiracy claim under the Act under Rules 12(b)(6) and 9(b), as to this scheme, and Defendant's motion to dismiss should be granted.

### 3.    *Stock and Revenue Sharing Scheme*

Defendant argues that Plaintiff's allegations regarding the alleged Stock and Revenue scheme have nothing to do with making a false claim to the federal government. (doc. 85 at 6.) Even assuming Plaintiff's allegations that Defendant and other defendants falsely represented that UFW had no plans to begin operating a non-charter program within the next two years was a false statement, the false statement was made to the State of Texas, and not the federal government. (*Id*.) Also, the document containing the statement was signed by Wallace, not Defendant, and there are no allegations describing Defendant's participation in the alleged false statement. (*Id*. at 7.) Finally, Defendant asserts that Plaintiff's allegation that the defendants wrongfully derived money from the federal government is conclusory and lacks details as to Defendant's involvement other than serving as the other defendants' office location. (*Id*.)

Plaintiff's allegations regarding a conspiracy to fraudulently obtain funds from investors do not show an agreement by Defendant and others to defraud the federal government. Similarly, Plaintiff's allegation that Defendant, UFW, Wallace, Jones, Mays, and Sanders falsely represented that they had no plans to begin operating a non-charter program within the next two years fails to show or suggest that the defendants agreed to make false statements or claims in order to obtain federal funds. Finally, Plaintiff's allegations that the named defendants wrongfully derived money from the TEA and United States of America are

13

conclusory and do not involve any agreement among the defendants to make false statements or claims in order to obtain federal funds, or any overt acts performed in furtherance of the agreement. Defendant's motion to dismiss Plaintiff's claim regarding this scheme under Rules 12(b)(6) and 9(b) should be granted. *See United States ex rel. Guth v. Roedel Parsons Koch Blache Balhoff & McCollister*, No. 13-6000, 2014 WL 7274913, at *8 (E.D. La. Dec. 18, 2014) (finding speculative and conclusory allegations failed to allege the existence of an unlawful agreement); *Westbrook*, 2012 WL 10649207 at *8; *Dekort,* 705 F.Supp.2d at 548.

### 4. *First Leasing scheme*

Here, Defendant argues that Plaintiff's allegations regarding the First Leasing scheme lack any false claims upon which the allegations are based. (doc. 85 at 7.) It notes that Plaintiff asserts that the alleged fraudulent scheme was prevented and never occurred. (*Id.*) Additionally, it contends that Plaintiff failed to show how the alleged scheme violated the Act, or what Defendant's role was in the conspiracy. (*Id.*)

Plaintiff fails to set forth factual allegations that suggest an agreement between Defendant and Wallace to derive funds from the federal government. His contention that Defendant and Wallace conspired to derive funds to be paid to Pinnacle in order to lease Defendant's property is conclusory and speculative. His allegations regarding a conflict of interest with Mays's position at Pinnacle and with Defendant, as well as the allegations regarding Ronkesha Mays's use of alternate names fall short of showing any false claims or statements agreed upon by Defendant and Wallace for the purpose of defrauding the government. Accordingly, Plaintiff's allegations regarding this scheme fail to state claim under Rule 12(b)(6), and fail allege a conspiracy with particularity under Rule 9(b). Defendant's motion to dismiss as to this scheme should be granted.

14

### 5.      *2011 Summer Food scheme*

Defendant contends that Plaintiff's allegations that Defendant's Property served as the feeding site for the 2011 Summer Food Program, and that the defendants conspired to make false claims, are conclusory and formulaic recitations that are insufficient to state a claim.  (doc. 85 at 7.)

Plaintiff simply alleges that Defendant, Wallace, Jones, and UFW knowingly conspired to make and did make false statements and claims in order to obtain federal funds under the Summer Food Program.  There are no allegations of an unlawful agreement among Defendant, Wallace, Jones, and UFW, or any allegations of any act performed in furtherance of the agreement.  Plaintiff has failed to state a claim for a conspiracy to defraud the government based on this scheme, and he has failed to plead with particularity the conspiracy and overt acts performed in furtherance of the conspiracy. *Westbrook*, 2012 WL 10649207 at *8; *Dekort,* 705 F.Supp.2d at 548.  Defendant's motion to dismiss any claim regarding this scheme should be granted.

### 6.      *2012 Summer Food scheme*

Finally, Defendant contends that Plaintiff fails to allege a fraudulent claim made to the federal government or what Defendant did to conspire to violate the Act in regards to the 2012 Summer Food scheme. (doc. 85 at 8.) It contends that at best, Plaintiff alleges that Defendant was a "mere tool used in the other Defendants' alleged nefarious scheme." (*Id.*)

Plaintiff makes no allegations that Defendant conspired with other defendants to make a claim or statement to the federal government.  His allegations that UFW and Wallace used Defendant's Property as a feeding site for the 2012 Summer Food Program are not enough to infer that Defendant was part of an alleged conspiracy.  Nor are they enough to show an overt act on the part of Defendant in furtherance

of any agreement.  Plaintiff has failed to state a claim of a conspiracy to defraud the government based on this scheme, and he has failed to plead with particularity a conspiracy and overt acts performed in furtherance of the conspiracy.  Defendant's motion to dismiss Plaintiff's claim regarding this scheme under Rules 12(b)(6) and 9(b) should be granted.  *Westbrook*, 2012 WL 10649207 at *8; *Dekort,* 705 F.Supp.2d at 548.

## III.  RECOMMENDATION

Defendant's motion to dismiss should be **GRANTED**, and Plaintiff's claims against it should be dismissed.

**SO RECOMMENDED on this 4th day of September, 2015.**

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE