**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| LAWRENCE M. SMITH, and UNITED STATES OF AMERICA, *ex rel* § § § | | |
| Plaintiffs, § § | | |
| v. § | Civil Action No. 3:12-CV-4377-M | |
| § | | |
| DEION L. SANDERS, *Individually*, ET AL., § § | | |
| Defendants. § | Referred to U.S. Magistrate Judge | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to the standing order of reference dated June 8, 2015 (doc. 126),[1] this case was referred for full case management, including the determination of non-dispositive motions and issuance of findings of fact and recommendations on dispositive motions. Before the Court are the *Motion to Dismiss for Failure to State a Claim Upon Which Relief May Be Granted Filed By Defendants Charity Church and Fredrick Mays*, filed August 10, 2016 (doc. 184), and the *Motion to Dismiss for Failure to State a Claim Upon Which Relief May Be Granted Filed by Defendants Damien LaMarc Wallace and Chazma Jones*, filed August 10, 2016 (doc. 186). Based on the relevant filings and applicable law, the motions to dismiss should be **GRANTED**.

**I. BACKGROUND**

On October 31, 2012, Lawrence Smith (Relator),[2] on behalf of the United States of America, filed suit against several defendants for violations of the False Claims Act, 21 U.S.C. §§ 3729-30

---

[1] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

[2] "Relator," sometimes referred to as a "qui tam plaintiff," is the name used to denote a private individual suing on behalf of the U.S. Government under the False Claims Act. *United States ex rel. Wismer v. Branch Banking & Trust Co.*, No. 3:12-CV-1894-B, 2013 WL 5989312, at *1 n.1 (N.D. Tex. Nov. 12, 2013).

(the Act) in *United States ex rel. Smith v. Sanders*, No. 3:12-CV-4377-M. (doc. 2.) He alleges that several defendants "committed several acts and omissions that contributed to and resulted in the making of false and fraudulent statements and claims to obtain federal grant funds" through the National School Lunch Program (the School Lunch Program) and Summer Food Service Program (the Summer Food Program).[3] (doc. 89 at 10-12.)

Relator filed another action on August 7, 2013 in *United States ex rel. Smith v. Wallace*, No. 3:13-CV-3106-M (the Related Action) against some of the same defendants as in this case, and others. (*See* doc. 2, Related Action.)[4] His claims related to the charter school application and grant applications for Prime Prep Academy (the Academy). (*See* doc. 2, Related Action; doc. 172 at 8.) On May 27, 2015, the Court consolidated both cases and ordered that "[a]ll future pleadings, motions, and other papers in these cases shall be filed under case number 3:12-CV-4377-M." (doc. 122 at 1; doc. 46, Related Action.) After consolidation, Relator amended his complaint from the Related Action. (*See* doc. 172.)

Relator alleges that several defendants, including Damien LaMarc Wallace a/k/a D.L. Wallace, Pastor Frederic R. Mays a/k/a F.R. Mays,[5] Charity Church, and Chazma Jones a/k/a Chazma Jones Brown (Defendants), made material false representations and statements in the Academy's charter application to obtain grant funds under the federally funded No Child Left Behind (NCLB) Act. (*Id.* at 3, 6-7.) The Academy's application was filed by Uplift Forth Worth,

---

[3] According to Relator, the School Lunch Program and Summer Food Program are federally mandated and funded programs that were administered by the State of Texas through its Department of Agriculture. (doc. 89 at 10-12.)

[4] Documents filed in *United States ex rel. Smith v. Wallace*, No. 3:13-CV-3106-M are identified with "Related Action" after the document number.

[5] Relator also identifies Pastor Mays as Bishop Mays. (*See* doc. 172-4 at 9.)

2

CDC (Uplift), a non-profit community development corporation, which was the Academy's sponsoring entity. (doc. 2, Related Action; docs. 172 at 8; 184-2 at 3.) He also alleges that the defendants received large sums of money through the Texas Education Agency (TEA), which administered the NCLB program in Texas. (doc. 172 at 3.)

Wallace is the President and CEO of Uplift, Pinnacle Commercial Property Group, LLC (Pinnacle), and Sports Groove, LLC a/k/a Prime Time Player (Sports Groove). (*Id.* at 6, 10-11.) Jones is a board member of Uplift and personal assistant to Wallace.[6] (*Id.* at 7-8.) Mays is the Pastor of Charity Church,[7] a non-profit organization, which owns property that was leased by the Academy, and is also identified as President of Pinnacle. (*See id.*; doc. 184-2 at 324, 396.)

Relator contends that a charter school application signed by Wallace and Jones was submitted to the TEA on February 22, 2011.[8] (docs. 172 at 21; 172-1 at 12; 172-6 at 6; 184-2 at 3.) It allegedly contained multiple material misrepresentations, including the purpose of the Academy; the financial relationship between Defendants and the Academy; the community support for the Academy (including financial support); the ownership of property used by the Academy; and the roles, qualifications, compensation, and backgrounds of various people involved, including Wallace. (*See* docs. 172-1 at 16-21; 172-2 at 1-21; 172-3 at 1-21; 172-4 at 1-21; 172-5 at 1-13.) The charter was approved by the State Board of Education on September 16, 2011, or December 8, 2011. (docs.

---

[6] Jones is also identified as the Treasurer for Uplift and an employee of Sports Groove in some of the documents included with the charter application. (*See* doc. 184-2 at 3, 128, 238, 311.)

[7] Relator alleges that Charity Church holds itself out to the public as an "active church," but it does not hold regular services and it has "participated in charitable giveaways in the past, in conjunction with promotions relating to for-profit schemes and endeavors." (doc. 172 at 14.)

[8] Wallace was identified on the application coversheet as the CEO of Uplift (the sponsoring entity) and Jones was identified as the application preparer. (*See* doc. 184-2 at 3.) Additionally, Jones, although Wallace's personal assistant and a board member of Uplift, was identified as being associated with Sports Groove. (*See* doc. 172 at 7-8; 184-2 at 3.)

3

172 at 21; 172-1 at 12; 172-2 at 1-2; 172-6 at 6.) Relator claims that the TEA failed to "properly and reasonably" scrutinize the information in the application, was aware of false statements in the application, and "conspired" and "collaborated" with Defendants. (docs. 172 at 21; 172-3 at 10-11; 172-5 at 1.)

After the Academy's charter was approved, Uplift submitted a 2012-2014 Public Charter School Federal Start-Up Grant Application (start-up grant application), a 2012-2013 NCLB Consolidated and Federal Grant Application (consolidated grant application), and a 2012-2013 Special Education Consolidated Grant Application (special education grant application), which also allegedly contained false statements. (*See* docs. 172-5 at 13-22; 172-6 at 1.) Wallace certified the start-up grant application on behalf of Uplift, and Rachel King-Sanders submitted the other two on behalf of the Academy. (doc. 172-5 at 13-14, 21; 172-6 at 1.) Uplift received a $600,000 federal start-up grant for the 2012 school year, and a total of $1,015,385 in federal grant funds overall. (docs. 172 at 4; 172-1 at 9, 14-15.) It then entered into financial agreements with companies operated by Wallace, including leasing and sales and marketing agreements with Pinnacle and Sports Groove. (docs. 172 at 4; 172-1 at 14; 172-6 at 15-18.) Additionally, Wallace and others involved with Uplift or the charter application were hired and paid salaries for their work with the Academy. (doc. 172-5 at 3-8.) For example, Wallace was paid a salary of $128,500 for being the Superintendent and Executive Director of the Academy, which was increased to $130,000 on January 24, 2013. (doc. 172-5 at 3.)

The Academy started its 2012 school year at its two campuses on August 27, 2012.[9] (doc.

---

[9] Kindergarten through sixth grades were located at the Forth Worth campus, while seventh through twelve grades were located at the Dallas campus. (doc. 172-6 at 7.)

172-1 at 9.) On July 15, 2014, the Academy's charter was revoked by the TEA. (doc. 172-6 at 10.) On July 30, 2014, the Academy appealed the revocation. (*Id.*) On January 13, 2015, TEA's Commissioner appointed a Board of Managers for the Academy, "[g]iven the recent deterioration of the charter school's financial situation . . . to ensure the orderly operation of [the] charter school while [a] revocation decision [was] pending." (*Id.* at 11.) On January 26, 2015, the Board of Managers voted unanimously to hand the Academy's charter back to the TEA, and on January 30, 2015, it voted unanimously to close the school. (*Id.*)

On August 10, 2016, Defendants moved to dismiss Relator's claims in relation to the charter and grant applications action under Rules 9(b) and 12(b)(6). (docs. 184, 186.) Relator responded on August 31, 2016, and Defendants replied on September 14, 2016. (docs. 196, 199.) The motions are now ripe for recommendation.

## II. APPLICABLE STANDARD

Defendants move to dismiss Relator's second amended complaint under Rule 12(b)(6) for failure to state a claim upon which relief can be granted, and under Rule 9(b) for failure to meet the heightened pleading requirements for fraud. (*See* docs. 184 at 1-2; 186 at 1-2.)

**A.   Rule 12(b)(6)**

Rule 12(b)(6) allows motions to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). The court must accept those well-pleaded facts as true and view them in the light most favorable to the relator. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is

5

improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation omitted). Nevertheless, a relator must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). The alleged facts must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In short, a complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is *plausible on its face*." *Id.* at 570 (emphasis added).

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (citations omitted). When relators "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570; *accord Iqbal*, 556 U.S. at 678 (noting that "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense").

Under the Rule 12(b)(6) standard, a court cannot look beyond the face of the pleadings. *Baker*, 75 F.3d at 196; *see also Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). "Pleadings" for purposes of a Rule 12(b)(6) motion include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d

6

496, 498 (5th Cir. 2000). Likewise, documents "attache[d] to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [his or her] claim[s]." *Collins*, 224 F.3d at 499 (citation omitted); *accord Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 725 (5th Cir. 2003). It is also "clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994).

Here, Defendants rely, in part, on the Academy's charter application, which was provided with one of the motions to dismiss. (*See* docs. 184, 186, 187, 199.) Because the application was referred to in Relator's amended complaint and is central to his claim, Defendants do not rely on any matters outside of the pleadings in support of their motions to dismiss. *See Collins*, 224 F.3d at 499 (noting "approvingly . . . that various other circuits have specifically allowed that documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim"). Conversion of the defendants' motions to dismiss into a motion for summary judgment is therefore unnecessary. *See id.*; *Katrina Canal Breaches Litig.*, 495 F.3d at 205.[10]

**B.    Rule 9(b)**

"Claims brought under the [Act] must comply with Federal Rule of Civil Procedure Rule 9(b), which requires pleading with particularity in cases alleging fraud." *United States ex rel. Doe v. Dow Chem. Co.*, 343 F.3d 325, 328 (5th Cir. 2003) (citing *United States ex rel. Thompson v.*

---

[10] In his response to Defendants' motions to dismiss, Relator submits additional documents that were not were not attached to his amended complaint. (*See* docs. 172, 196, 196-1, 196-2, 196-3, 196-4, 196-5, 196-6, 196-7, 196-8.) Because the Court may not look beyond the pleadings when considering a motion to dismiss, it does not consider additional facts or claims raised in a response. *Hill v. Hunt*, No. 3:07-CV-2020-O, 2010 WL 54756, at *4 (N.D. Tex. Jan. 4, 2010) (citing *Spivey*, 197 F.3d at 774).

*Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997)). A dismissal for failure to plead fraud with particularity pursuant to Rule 9(b) is treated the same as a Rule 12(b)(6) dismissal for failure to state a claim. *McCall v. Genentech, Inc.*, No. 3:10-CV-1747-B, 2011 WL 2312280, at *3 (N.D. Tex. June 9, 2011) (citing *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996)). Rule 9(b) contains a heightened pleading standard and requires a plaintiff to plead the circumstances constituting fraud with particularity.[11] *See* Fed. R. Civ. P. 9(b); *City of Clinton v. Pilgrim's Pride Corp.*, 632 F.3d 148, 153 (5th Cir. 2010). "[A]rticulating the elements of fraud with particularity requires a plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams v. WMX Techs.*, 112 F.3d 175, 177 (5th Cir. 1997). "Put simply, Rule 9(b) requires 'the who, what, when, where, and how' to be laid out" with respect to a fraud claim. *Benchmark Electronics, Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003) (quoting *Williams*, 112 F.3d at 179).

### III. FALSE CLAIMS ACT

The Act "is the government's primary litigation tool for recovering losses sustained as the result of fraud." *United States. ex rel. Marcy v. Rowan Companies, Inc.*, 520 F.3d 384, 388 (5th Cir. 2008). It may be enforced in suits filed by the Attorney General, or in *qui tam* actions brought by private individuals in the government's name. *Graham Cty. Soil & Water Conservation Dist. v.*

---

[11] Federal Rule of Civil Procedure 9(b) states:

**(b) Fraud or Mistake; Conditions of Mind.** In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

Fed. R. Civ. P. 9(b).

*United States ex rel. Wilson*, 545 U.S. 409, 411-12 (2005) (citing 31 U.S.C. § 3730(a) & (b)(1)).

The Act states, in relevant part:

> (a) Liability for certain acts.—
> > (1) in general.–Subject to paragraph (2), any person who—
> > > (A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;
> > > (B) knowingly makes, uses, or causes to be made or used, a false record or statements material to a false or fraudulent claim;
> > > (C) conspires to commit a violation of subparagraph (A), (B) . . .;
> > > . . .
> > is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000.

31 U.S.C. § 3729(a)(1)(A), (B), (C).[12] To state a claim under the Act, a relator must allege: (1) a false statement or fraudulent course of conduct; (2) made or carried out with the requisite scienter; (3) that was material; and (4) that was presented to the Government. *United States ex rel. Steury v. Cardinal Health Inc.*, 625 F.3d 262, 267 (5th Cir. 2010); *United Sates ex rel. Patton v. Shaw Servs., L.L.C.*, 418 F. App'x 366, 369 (5th Cir. 2011) (per curiam).

### A.     **Charter Application**

Defendants move to dismiss Relator's claim regarding the charter application. (*See* docs. 184-1 at 10-15; 187 at 11, 20.)

#### a.     *Source of False Claims*

Defendants first argue they did not make a false claim. (*See* docs. 184-1 at 10-15; 187 at 11,

---

[12] On May 20, 2009, Congress enacted the Fraud Enforcement & Recovery Act of 2009 (FERA), which amended the Act and re-designated 31 U.S.C. § 3729(a)(3) as 31 U.S.C. § 3729(a)(1)(C). *See* Fraud Enforcement & Recovery Act of 2009, Pub.L. 111–21, § 4(d), 123 Stat. 1617, 1624–25 (2009). The pre-FERA version of the Act imposed liability on any person who "conspires to defraud the Government by getting a false or fraudulent claim allowed or paid." 31 U.S.C. § 3729(a)(3). The amendments to this subsection only apply to conduct occurring on or after May 20, 2009. *See* Fraud Enforcement & Recovery Act of 2009, Pub.L. 111–21, § 4(f)(1), 123 Stat. 1617, 1625 (2009). Because Relator alleges conduct that occurred after May 20, 2009, the amended version of this subsection applies. The Fifth Circuit has noted that the difference between the two versions of the statute is "inconsequential," however. *United States ex rel. Spicer v. Westbook*, 751 F.3d 354, 360 n.8 (5th Cir. 2014).

20.) Under the Act, a defendant may be liable for his or her false statements or fraudulent course of conduct. *See Steury*, 625 F.3d at 267. A corporation may also be vicariously liable for an employee's violations of the Act. *United States v. Hangar One, Inc.*, 563 F.2d 1155, 1158 (5th Cir. 1977). To allege vicarious liability, a relator must show the corporation's employees were "acting within the scope of their authority and for the purpose of benefitting the corporation." *Id.* at 1158; *accord United States ex rel. Wismer v. Branch Banking & Trust Co.*, No. 3:12-CV-1894-B, 2013 WL 5989312, at *7 n.11 (N.D. Tex. Nov. 12, 2013) (citing *Hangar One, Inc.*, 563 F.2d at 1158). When an employer is vicariously liable for the actions of its employee, the employee may also be individually liable under the Act as well. *See, e.g., United States v. Aerodex, Inc.*, 469 F.2d 1003, 1013 (5th Cir. 1972) (holding corporation and individual corporate officer jointly and severally liable for violations of the Act).

Here, Relator generally alleges that Defendants made false statements in the charter application. (*See* doc. 172 at 3, 11-12.) The application, which is part of the pleadings, shows that neither Pastor Mays nor Charity Church signed the charter application. (doc. 184-2 at 3-424.) Accordingly, he has not alleged that Pastor Mays or Charity Church made false statements in submitting the charter application, and their motion to dismiss should be granted on this basis.

The charter application coversheet and applicant checklist were signed by Wallace as the CEO of the Uplift and Jones as the application preparer (in association with Sports Groove). (*See* doc. 184-2 at 3, 7.) In signing the documents, Wallace and Jones certified that the application was complete and accurate. (*Id.* at 3.) Relator has sufficiently alleged that Wallace and Jones made false statements in the charter application.

### b. *Claim*

Wallace and Jones next argue that the charter application was not a claim for payment or approval made to the federal government. (*Id.* at 10.)

For liability under the Act, a defendant must have made a false claim to the United States. *See* 31 U.S.C. § 3729(a)(1)(A), (B), (C); *United States ex rel. Bennett v. Medtronic, Inc.*, 747 F. Supp. 2d 745, 765 (S.D. Tex. 2010) ("The Supreme Court has cautioned that the [Act] does not punish every type of fraud committed upon the government."). "The term 'claim' means 'any request or demand, whether under a contract or otherwise, for money or property . . . that . . . is presented to an officer, employee, or agent of the United States.'" *Steury*, 625 F.3d at 267 (quoting 31 U.S.C. § 3729(b)(2)). "[T]he conception of a claim against the government normally connotes a demand for money or for some transfer of public property." *United States v. McNinch*, 356 U.S. 595, 598 (1958) (quoting *United States v. Tieger*, 234 F.2d 589, 591 (3rd Cir. 1956)).

Here, Relator does not allege that the charter application was a request or demand for money or property to the United States. (*See* docs. 172, 172-1, 172-2, 172-3, 172-4, 172-5, 172-6.) Rather, he alleges that the charter application was made to the TEA and was approved by the State Board of Education, not the United States, and that it did not request money. (doc. 172 at 4.) Because the charter application did not request or demand money or property from the United States, it was not a claim to the United States under the Act. The Act is therefore inapplicable, and his claim regarding the charter application should be dismissed for failure to state a claim.[13]

---

[13] Even if the charter application was a claim under the Act, Relator's claim regarding the charter school application would still be subject to dismissal because he has not alleged that any false statements were material. Although Relator alleges that the charter application contained numerous false statements, he also alleged that the TEA was aware of the false statements and "conspired" and "collaborated" with the defendants. (docs. 172 at 21; 172-2 at 1-2; 172-3 at 10; 172-5 at 1) ("[The TEA], and its members, as well as the Texas State Board of Education, had notice of these issues prior to voting on and approving the Sixteenth Generation Charter School Application filed by

B.     **Grant Applications**

Defendants also move to dismiss Relator's claim regarding the grant applications. (*See* docs. 184-1 at 10-15; 187 at 11, 20.)

Here, Relator generally alleges that Defendants "jointly and severally committed acts and omissions that contributed to and resulted in the making of false and fraudulent statements and claims to obtain federal grants through the [TEA]." (doc. 172-5 at 13.) In support, he alleges that Uplift falsely represented itself as a non-profit entity, and that Wallace falsely signed documents representing financial stability in the start-up grant application. (*Id.* at 14.) He also alleges that the TEA "conspired" with Defendants to meet the requirements for compliance with the start-up grant. (*Id.*) Additionally, Relator alleges that the consolidated grant application and special education grant application were prepared and submitted by Rachel King-Sanders. (*Id.* at 21-22.)

Because Relator does not allege that Pastor Mays, Charity Church, or Jones made any false statements in submitting the start-up grant application, he has failed to allege an essential element of a claim under the Act for those defendants. Likewise, he does not allege Defendants made any false statements in the consolidated grant application and special education grant application. Although Relator alleges that Wallace signed the start-up grant application, he fails to allege that any false statements made by Wallace in submitting the start-up application were material because the TEA was aware of the misstatements and "conspired" with him to meet the requirements for compliance with the start-up grant. *See, e.g., Univeral Health Servs., Inc. v. United States*, 136 S.

---

Defendant[s] . . . on September 16, 2011.") Because Relator alleges that the false statements did not affect the TEA and State of Education's decision, he has failed to allege that any false representations were material. *See, e.g., Univeral Health Servs., Inc. v. United States*, 136 S. Ct. 1989, 2003 (2016) (noting "if the Government pays a particular claim in full despite its actual knowledge that certain requirements were violated, that is very strong evidence that those requirements are not material").

Ct. 1989, 2003 (2016) (noting "if the Government pays a particular claim in full despite its actual knowledge that certain requirements were violated, that is very strong evidence that those requirements are not material"). Accordingly, Relator has failed to nudge his claim across the line from conceivable to plausible. *See Twombly*, 550 U.S. at 570. The Defendants' motions to dismiss claims related to the grant applications should therefore be granted.

**C.     Conspiracy**

Finally, Defendants argue that to the extent that Relator alleges that Defendants conspired to present a false claim, he also fails to state a claim. (docs. 184-1 at 15-16; 187 at 22.)

In order to prove a conspiracy, a relator must show "(1) the existence of an unlawful agreement between defendants to get a false or fraudulent claim allowed or paid by [the Government] and (2) at least one act performed in furtherance of that agreement." *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 193 (5th Cir. 2009) (quoting *United States ex rel. Farmer v. City of Houston*, 523 F.3d 333, 343 (5th Cir. 2008)). An agreement may be inferred when it is the natural consequence of the factual allegations. *Id.* at 193-94. Also, the relator must demonstrate that the defendants shared a specific intent to defraud the government. *United States ex rel. Phillips v. L-3 Commc'ns, Integrated, Sys. L.P.*, No. 3:10-CV-1784, 2012 WL 3649699, at *8 (N.D. Tex. Aug. 24, 2012) (citing *Farmer*, 523 F.3d at 343). Rule 9(b)'s particularity requirement applies to conspiracy claims under the Act, and a relator alleging conspiracy to defraud the government must "plead with particularity the conspiracy as well as the overt acts . . . taken in furtherance of the conspiracy." *Grubbs*, 565 F.3d at 193. Because the conspiracy provision lacks a presentment element, however, presentment of a false claim does not need to be pleaded or proven in order to prevail on a conspiracy claim under the Act. *Id.*

13

Here, Relator alleges Defendants (and others) made material false representations and statements in the Academy's charter application to obtain grant funds under the federally funded NCLB Act. (doc. 172 at 3.) He contends that Wallace and Jones signed the charter school's application, and that Wallace signed the start-up grant application, which contained numerous material false representations. He also contends that the TEA was aware of these false statements and "conspired" with the defendants. Relator's factual allegations regarding the charter and grant applications do not show or suggest that the applications were a claim made to the United States, however.

To the extent that Relator alleges that a conspiracy existed, he alleges it only in a conclusory manner. He fails to make any allegations regarding an agreement by Defendants to defraud the government or overt acts performed in furtherance of the agreement. *See United States ex rel. Westbrook v. Navistar, Inc.*, No. 3:10-CV-1578, 2012 WL 10649207, at *8 (N.D. Tex. July 11, 2012) (finding absent the relator's conclusory pleading that defendants "agreed together" to make false statements that vehicle parts were painted in conformance with applicable standards and included those false statements in claims submitted to the government, there were no allegations of an unlawful agreement among the defendants or allegations of any act performed in furtherance of the agreement). Relator's allegations are not enough to infer that Defendants were part of an alleged conspiracy. Nor are they enough to show an overt act on their part in furtherance of any agreement. Accordingly, he has failed to state a claim under Rule 12(b)(6), and he has failed to plead with particularity a conspiracy and overt acts performed in furtherance of the conspiracy under Rule 9(b). Defendants' motions to dismiss Relator's conspiracy claim under Rules 12(b)(6) and 9(b) should be granted. *Westbrook*, 2012 WL 10649207 at *8; *Dekort v. Integrated Coast Guard Systems*, 705

14

F. Supp. 2d 519, 548 (N.D. Tex. 2010) (dismissing claim under Rules 12(b)(6) and 9(b) where relator failed to state a claim of conspiracy to defraud the government and to plead with particularity the conspiracy as well as the overt acts taken in furtherance of the conspiracy).

## IV. RECOMMENDATION

Defendants' motions to dismiss should be **GRANTED**, and Relator's claims against them for presenting a false claim and conspiring to submit a false claim in relation to the charter school and grant applications should be **DISMISSED WITH PREJUDICE**.

**SO RECOMMENDED**, this 30th day of January, 2016.

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE