IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LAWRENCE M. SMITH, and UNITED STATES OF AMERICA, *ex rel* | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 3:12-CV-4377-M |
| DEION L. SANDERS, *Individually*, ET AL., | § § § | |
| Defendants. | § | Referred to U.S. Magistrate Judge |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to the standing order of reference dated June 8, 2015 (doc. 126), this case was referred for full case management, including the determination of non-dispositive motions and issuance of findings of fact and recommendations on dispositive motions. Before the Court is *Motion for Summary Judgment Filed By Defendants Damien LaMarc Wallace, Fredrick R. Mays and Chazma Jones*, filed July 30, 2017 (doc. 333). Based on the relevant filings, evidence, and applicable law, the motion for summary judgment should be **GRANTED**.

**I. BACKGROUND**

On October 31, 2012, Lawrence Smith (Relator),[1] on behalf of the United States of America, filed suit against several defendants, including Damien LaMarc Wallace a/k/a D.L. Wallace (Wallace), Frederic R. Mays a/k/a F.R. Mays (Mays), Chazma Jones a/k/a Chazma Jones Brown (Jones) (collectively Defendants), for violations of the False Claims Act, 31 U.S.C. §§ 3729-30 (the

---

[1] "Relator," sometimes referred to as a "qui tam plaintiff," is the name used to denote a private individual suing on behalf of the U.S. Government under the False Claims Act. *United States ex rel. Wismer v. Branch Banking & Trust Co.*, No. 3:12-CV-1894-B, 2013 WL 5989312, at *1 n.1 (N.D. Tex. Nov. 12, 2013).

Act).² (doc. 2.) He alleges that Defendants "committed several acts and omissions that contributed to and resulted in the making of false and fraudulent statements and claims to obtain federal grant funds" through the Summer Food Service Program (the Summer Food Program).³ (doc. 89 at 12.)⁴

The Summer Food Program was established to ensure that low-income children continue to receive nutritious meals when schools are not in session, primarily in the summer months. (doc. 335 at 10.) The program was administered nationally through the Food and Nutrition Service of the U.S. Department of Agriculture (USDA), and within each state through one of three entities: the state's department of education, an alternate state-designated agency, or a regional office of the Food and Nutrition Service. (*Id.*)

Organizations that wanted to sponsor a site as part of the Summer Food Program were required to meet certain criteria contained in 7 CFR 225.14(b)-(d), and private non-profit organizations were required to be tax exempt. (*Id.* at 13.) An organization's applications were also required to meet the requirements of the administering agency, which varied from state-to-state.⁵

---

²On August 7, 2013, Relator filed another action in *United States ex rel. Smith v. Wallace*, No. 3:13-CV-3106-M (the Related Action) against Defendants and others. (*See* doc. 2, Related Action.) His claims related to the charter school application and grant applications for Prime Prep Academy. (*See* doc. 2, Related Action; doc. 172 at 8.) On May 27, 2015, the Court consolidated both cases and ordered that "[a]ll future pleadings, motions, and other papers in these cases shall be filed under case number 3:12-CV-4377-M." (doc. 122 at 1; doc. 46, Related Action.) After consolidation, Relator amended his complaint from the Related Action. (*See* doc. 172.) The claims against Defendants for presenting a false claim and conspiring to submit a false claim in relation to the charter school and grant applications were dismissed with prejudice on March 21, 2017. (docs. 212, 233.)

³Relator also alleges violations against another defendant with regards to the National School Lunch Program, but he does not include Defendants in that section. (*See* doc. 89 at 10-12.)

⁴Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

⁵All applications included the following basic requirements: (1) submit documentation of tax-exempt status; (2) demonstrate adequate administrative and financial responsibility; (3) provide information for proposed sites; (4) provide written policy statements on free meals; (5) provide a proposed media release; (6) submit a complete management plan; (7) apply for advance payment, if needed; (8) certify that a training program will be conducted for monitors and site personnel; (9) provide a copy of the invitation for bids (for sponsors who planned to use a food service management company); (10) apply for start-up payments, if needed and available; (11) certify that the sponsor will have

(*Id.* at 54-56.) Sponsors had to reapply each year; however, sponsors who participated in the Summer Food Program during the previous year and were not found to be seriously deficient in the program's operation were permitted to submit condensed information for succeeding years. (*Id.* at 16.) Approved sponsors then entered into a permanent program agreement (Permanent Agreement) with the administering State agency. (*Id.* at 58-59.)

Sponsors could request federal funds, either as advance payments or reimbursements for meals served. (*Id.* at 77-84.) As part of the program, sponsors were required to "keep full and accurate records so they [could] substantiate the number of program meals that they . . . submitted on each claim for reimbursement and [to ensure the Summer Food Program] funds [were] used only for allowable [program] costs." (*Id.* at 85.)

Uplift Fort Worth, CDC (Uplift) submitted an application to become a sponsor for the Summer Food Program on March 23, 2011 (2011 Application). (docs. 335 at 98-144; 335-1 at 1-149; 335-2 at 1-49.) The 2011 Application was certified by Wallace, who was identified as the Chairman/Director of Uplift. (doc. 335 at 98-99.) Jones was identified as the Director of Administration and as a supervisory person who received annual training required by the Texas Department of Agriculture (TDA). (*Id.*) Both Wallace and Jones were designated as Authorized Representatives of Uplift with TDA. (doc. 335-2 at 39.) The 2011 Application was approved on May 31, 2011. (doc. 335 at 137-38.) Uplift reapplied on March 15, 2012. (docs. 335-2 at 50-125; 335-3 at 1-93.)

Between March 2010 and September 2013, Relator contacted various government agencies and departments about perceived fraudulent and deceptive conduct by Defendants and other

---

direct operational control at each site. (doc. 335 at 54-56.)

individuals and entities. (*See* doc. 335-3 at 94-106.) Some of his complaints were unrelated to the Summer Food Program. (*See id.* at 96.) On April 19, 2012, Relator sent a letter to the USDA, Office of the Inspector General, outlining his allegations of alleged fraud regarding the Summer Food Program. (docs. 335-3 at 100-03; 363-1 at 2-9.)

TDA hired Horne CPA & Business Advisors (Horne) to perform a third-party review of Uplift's participation the Summer Food Program. (docs. 363-1 at 39-43; 363-2 at 2.) Horne inspected available supporting documentation of meals purchased and served, and expenses incurred by Uplift from June 1, 2011 through August 31, 2011, to evaluate compliance with the program's guidelines. (doc. 363-1 at 39-40.) Horne sent TDA its findings and recommendations in a letter dated August 13, 2012. (*Id.* at 39-43.) It found errors in the 2011 and 2012 Applications and Viability, Capability and Accountability Checklist as well as unreconciled costs for both vendors and operating and administrative payroll costs. (*Id.* at 41-43.) It also found "a lack of control over the access to cash and no system in place to ensure the 'accurate, current and complete' recording and reporting of financial transactions." (*Id.* at 42.) Horne recommended "that TDA require Uplift to provide supporting documentation as required by federal regulations to support any and all claims going forward. . . . [and] that Uplift implement a financial management system that includes an operational financial reporting process with effective controls." (*Id.* at 43.)

Based on Horne's report, TDA requested additional supporting documentation from Uplift on October 2, 2012. (doc. 363-2 at 2-2.) On April 21, 2014, TDA informed Uplift that it was terminating its Permanent Agreement with Uplift, so that it was no longer eligible to participate in certain programs administered by TDA, including the Summer Food Program. (*Id.* at 42-43.) Wallace and Jones were also excluded from participating in the program. (*Id.* at 43.)

4

On July 30, 2017, Defendants moved for summary judgment on Relator's claims related to the Summer Food Program. (docs. 333-35.) Relator responded on August 21, 2017, and Defendants replied on September 4, 2017.[6] (docs. 363, 380.) The motion is now ripe for recommendation.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* The movant makes a showing that there is no genuine issue of material fact by informing the court of the basis of its motion and by identifying the portions of the record that reveal there are no genuine material fact issues. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party can also meet its summary judgment burden by "pointing out to the district court that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325 (internal quotation omitted).

Once the movant makes this showing, the non-movant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Id.* at 324. To carry this burden, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-movant must show that the evidence is sufficient to support a resolution of the factual issue in her favor. *Anderson*, 477 U.S. at 249. The nonmovant's burden cannot be satisfied by conclusory allegations, unsubstantiated assertions, or a mere scintilla

---

[6]In his response, Relator moved to strike Defendants' motion for summary judgment. (doc. 363 at 1-5.) That motion was denied on August 28, 2017. (doc. 373.)

5

of evidence. *Douglass v. United Servs. Auto. Ass'n*, 65 F.3d 452, 459 (5th Cir. 1995), *revised on other grounds*, 79 F.3d 1415 (5th Cir. 1995) (en banc). "If the [nonmoving party's] theory is . . . senseless [where] no reasonable jury could find in its favor, [then] summary judgment should be granted." *Lottinger v. Shell Oil Co.*, 143 F. Supp. 2d 743, 751 (S.D. Tex. 2001) (quoting *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 468-69 (1992)).

"The parties may satisfy their respective burdens by 'citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials.'" *Rooters v. State Farm Lloyds*, 428 F. App'x 441, 445 (5th Cir. 2011) (citing Fed. R. Civ. P. 56(c)(1)). While all of the evidence must be viewed in a light most favorable to the motion's opponent, *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)), neither conclusory allegations nor unsubstantiated assertions satisfy the non-movant's summary judgment burden, *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). There is also "no genuine issue as to any material fact [if] a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. Summary judgment in favor of the movant is proper if, after adequate time for discovery, the motion's opponent fails to establish the existence of an element essential to her case and as to which she will bear the burden of proof at trial. *Id.* at 322-23.[7]

---

[7]Rule 56 imposes no obligation "to sift through the record in search of evidence to support a party's opposition to summary judgment." *Adams v. Travelers Indem. Co.*, 465 F.3d 156, 164 (5th Cir. 2006) (quoting *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (noting the responding party on summary judgment must "identify *specific evidence* in the record" supporting challenged claims and "articulate the precise manner in which that evidence supports [those] claim[s]"); *see also Armstrong v. Boehringer Ingelheim Pharms., Inc.*, No. 3:08-CV-1458-O, 2010 WL 2540751, at *3 (N.D. Tex. June 21, 2010) ("The Fifth Circuit established almost thirty years ago that '[j]udges are not

# III. FALSE CLAIMS ACT

The Act "is the government's primary litigation tool for recovering losses sustained as the result of fraud." *United States. ex rel. Marcy v. Rowan Companies, Inc.*, 520 F.3d 384, 388 (5th Cir. 2008). It may be enforced in suits filed by the Attorney General, or in *qui tam* actions brought by private individuals in the government's name. *Graham Cty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 545 U.S. 409, 411-12 (2005) (citing 31 U.S.C. § 3730(a) & (b)(1)). The Act states, in relevant part:

> (a) Liability for certain acts.—
>   (1) In general.–Subject to paragraph (2), any person who—
>     (A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;
>     (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;
>     (C) conspires to commit a violation of subparagraph (A), (B) . . .;
>       . . .
>     is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000 . . . plus 3 times the amount of damages which the Government sustains because of the act of that person.

31 U.S.C. § 3729(a)(1)(A)-(C).[8]

## A. **Public Disclosure Bar**

Defendants first move for summary judgment on Relator's claims under the Act's public

---

ferrets' under Rule 56. The Fifth Circuit has more recently reiterated that '[j]udges are not like pigs, hunting for truffles buried in briefs.'") (internal citations omitted).

[8] On May 20, 2009, Congress enacted the Fraud Enforcement & Recovery Act of 2009 (FERA), which amended the Act and re-designated 31 U.S.C. § 3729(a)(3) as 31 U.S.C. § 3729(a)(1)(C). *See* Fraud Enforcement & Recovery Act of 2009, Pub.L. 111–21, § 4(d), 123 Stat. 1617, 1624–25 (2009). The pre-FERA version of the Act imposed liability on any person who "conspires to defraud the Government by getting a false or fraudulent claim allowed or paid." 31 U.S.C. § 3729(a)(3). The amendments to this subsection only apply to conduct occurring on or after May 20, 2009. *See* Fraud Enforcement & Recovery Act of 2009, Pub.L. 111–21, § 4(f)(1), 123 Stat. 1617, 1625 (2009). Because Relator alleges conduct that occurred after May 20, 2009, the amended version of this subsection applies. The Fifth Circuit has noted that the difference between the two versions of the statute is "inconsequential," however. *United States ex rel. Spicer v. Westbook*, 751 F.3d 354, 360 n.8 (5th Cir. 2014).

disclosure bar, alleging lack of subject-matter jurisdiction and citing 31 U.S.C. § 3730(e)(4)(A) (2006). (doc. 334 at 10).

>Section 3730(e)(4) states:
>
>(A) The court shall dismiss an action or claim under this section, unless opposed by the Government, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed--
>    (i) in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party;
>    (ii) in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or
>    (iii) from the news media,
>unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.
>
>(B) For purposes of this paragraph, "original source" means an individual who either (i) prior to a public disclosure under subsection (e)(4)(a), has voluntarily disclosed to the Government the information on which allegations or transactions in a claim are based, or (2) who has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the Government before filing an action under this section.

*Id.* § 3730(e)(4)(A)-(B).

The language of the public disclosure bar was amended effective July 22, 2010. Pub.L. No. 111–148, 124 Stat. 119, 901, § 10104(j)(2) (Mar. 23, 2010). The facts forming the basis of Relator's claim against Defendants occurred after the 2010 amendments went into effect, (*see* docs. 335 at 98; 335-2 at 50), so the amended version of the statute applies to Relator's allegations against Defendants, *see United States ex rel. Jamison v. McKesson Corp.*, 649 F.3d 322, 326 n.6 (5th Cir. 2011). Based on the amendment, the Fifth Circuit no longer treats the public disclosure bar as a jurisdictional threshold. *Abbott v. BP Expl. & Prod., Inc.*, 851 F.3d 384, 387 n.2 (5th Cir. 2017) ("We agree with our sister circuits that the public disclosure bar is no longer jurisdictional. We are thus not required to first address this argument . . ., as it has no effect on our jurisdiction to entertain

other, more persuasive arguments.") (citing *United States ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 300 (3d Cir. 2016) ("[W]e conclude that the amended bar is not jurisdictional."); *United States ex rel. Osheroff v. Humana, Inc.*, 776 F.3d 805, 810 (11th Cir. 2015) ("We conclude that the amended § 3730(e)(4) creates grounds for dismissal for failure to state a claim rather than for lack of jurisdiction."); *United States ex rel. May v. Purdue Pharm. L.P.*, 737 F.3d 908, 916 (4th Cir. 2013) ("It is apparent, however, that the public-disclosure bar is no longer jurisdictional.")).[9]

Because the public disclosure bar is no longer jurisdictional, Defendants' motion for summary judgment on this basis should be **DENIED**.

**B.**     **Presentment and False Record**

Defendants next move for summary judgment on Relator's claims under § 3729(a)(1)(A)-(B). (*See* doc. 334 at 17-21.)

"For a sustainable presentment or false record theory under the [Act], the Fifth Circuit requires (1) a false or fraudulent claim or statement; (2) made or carried out with the requisite scienter; (3) that was material; and (4) that caused the government to pay or forfeit money." *United States ex rel. Wall v. Vista Hospice Care, Inc.*, 778 F. Supp. 2d 709, 717 (N.D. Tex. 2011) (citing *United States ex rel. Longhi v. Lithium Power Techs., Inc.*, 575 F.3d 458, 467 (5th Cir. 2009) (applying elements to both presentment and false record theories)); *accord United States ex rel.*

---

[9] At least two district courts in Texas appear to have treated the public disclosure bar as an affirmative defense after the amendment. *See United States ex rel. Lockey v. City of Dallas*, No. 3:11-CV-354-O, 2013 WL 268371, at *5 & n.3, 13, 16 n.3 (N.D. Tex. Jan. 23, 2013) (discussing the affirmative defense standard and its impact on summary judgment), *aff'd*, 576 F. App'x 431 (5th Cir. 2014) (per curiam); *United States ex rel. Harman v. Trinity Indus., Inc.*, No. 2:12-CV-00089-JRG, 2014 WL 47258, at *4 (E.D. Tex. Jan. 6, 2014) (noting the 2010 Amendment "recharacterize[d] the public disclosure bar as a ground for dismissal—effectively, an affirmative defense—rather than a jurisdictional bar") (citing *Lockey*, 2013 WL 268371, at *5).

9

*Ramsey-Ledesma v. Censeo Health, LLC*, No. 3:14-CV-00118-M, 2016 WL 5661644, at *3 (N.D. Tex. Sept. 30, 2016); *United States ex rel. Westbrook v. Navistar, Inc.*, No. 3:10-CV-1578-O, 2012 WL 10649207, at *5 (N.D. Tex. July 11, 2012), *aff'd*, 751 F.3d 354 (5th Cir. 2014).

### 1. *Claim for Payment*

Defendants first contend that the documents relied on by Relator are not claims for payment as a matter of law, and that he has no evidence that would create a genuine issue of material fact sufficient to preclude summary judgment. (doc. 334 at 17-19.)

"The [Act] is not a general 'enforcement device' for federal statutes, regulations, and contracts." *United States ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 268 (5th Cir. 2010) (citing *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 902 (5th Cir. 1997); *Mikes v. Straus*, 274 F.3d 687, 699 (2d Cir. 2001) (observing that the Act "was not designed for use as a blunt instrument to enforce compliance")). "Not every breach of a federal contract is an FCA problem." *Id.* Nor was the Act "intended to impose liability for every false statement made to the government." *United States v. Southland Mgmt. Corp.*, 326 F.3d 669, 675 n.17 (5th Cir. 2003) (quoting *Hutchins v. Wilentz, Goldman & Spitzer*, 253 F.3d 176, 184 (3d Cir. 2001)). Rather, it permits the United States, or a private person on the government's behalf, to sue a person who has presented "a false or fraudulent *claim* for payment or approval" to the United States. 31 U.S.C. §§ 3729(a), 3730(b) (emphasis added).

"The term 'claim' is broadly defined, encompassing 'any request or demand, whether under a contract or otherwise, for money or property' that is presented to the Government." *United States ex rel. McLain v. Fluor Enters., Inc.*, 681 F. App'x 355, 359-60 (5th Cir. 2017) (per curiam)

(quoting 31 U.S.C. § 3729(b)(2)(A)-(B)).[10]  "[W]hether a claim is valid depends on the contract, regulation, or statute that supposedly warrants it. It is only those claims for money or property to which a defendant is not entitled that are 'false' for purposes of the [Act]." *Southland Mgmt. Corp.*, 326 F.3d at 674-75 (citing *Costner v. URS Consultants, Inc.*, 153 F.3d 667, 677 (8th Cir. 1998) ("[O]nly those actions by the claimant . . . [calculated to] caus[e] the United States to pay out money it is not obligated to pay . . . are properly considered 'claims' within the meaning of the FCA.")).

Here, to meet their initial summary judgment burden, Defendants point to the 2011 and 2012 Applications, which did not contain requests for money, but allowed Uplift to become an approved sponsor that was eligible to apply for federal funds. (docs. 334 at 18; 335 at 98; 335-2 at 50.) They also point to the absence of admissible evidence of any claim for money by them. (doc. 334 at 17-19.) In pointing out the need for and lack of evidence of a necessary element, Defendants have met their summary judgment burden. *See Celotex*, 477 U.S. at 325; *see also Southland Mgmt. Corp.*, 326 F.3d at 675 ("There is no liability under [the] Act for a false statement unless it is used to get [a] false claim paid."). Accordingly, the burden shifts to Relator to identify evidence in the record that

---

[10]In its entirety, the statute states that a "claim":

    (A) means any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property, that--
        (i) is presented to an officer, employee, or agent of the United States; or
        (ii) is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government--
            (I) provides or has provided any portion of the money or property requested or demanded; or
            (II) will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded; and
    (B) does not include requests or demands for money or property that the Government has paid to an individual as compensation for Federal employment or as an income subsidy with no restrictions on that individual's use of the money or property.

31 U.S.C. § 3729(b)(2).

raises a genuine issue of material fact regarding the claims for payment.

Relator argues that the applications contained "numerous false factual statements," and that Defendants "intentionally and knowingly conspired to make and did make numerous false statements, under penalty of perjury, to place themselves in position to make claims for funding of the Summer Food Service Program." (doc. 363 at 8-9.) He does not appear to dispute that the applications do not contain a claim for payment, however. (*See id.* at 8-9.) Nor does Relator identify evidence in the record of a claim for payment. (*See* docs. 363, 363-1, 363-2.) At most, he contends in a conclusory manner that false representations were made in the 2011 and 2012 Applications, and that Defendants received money from the government based, in part, on those representations. (doc. 363 at 9.)

Relator also generally cites to Exhibits D and E. (*Id.*) Exhibit D is the summary of Horne's review of Uplift's involvement with the 2011 and 2012 Summer Food Program. (doc. 363-1 at 39-43.) Exhibit E is a letter from TDA to Wallace, dated October 2, 2012, requesting additional supporting documentation from Uplift. (doc. 363-2 at 2-3.) Although Relator generally references these exhibits as evidence, he does not specifically point to any part of the exhibits or explain how they support his claim. (*See* doc. 363 at 5-10.) Neither exhibit is a claim for payment made by Defendants; both exhibits generally reflect funds paid to Uplift. Accordingly, even assuming that the applications contained false statements, and viewing all of the evidence in the light most favorable to Relator, he has not met his summary judgment burden to identify record evidence creating a genuine issue of material fact as to whether Defendants made a claim for payment to the

government.[11] He has therefore failed to meet his burden on this element.

## 2. Scienter

Defendants next contend that they are entitled to summary judgment because no evidence exists showing that they intended to make a false record or statement. (doc. 334 at 21.)

Under the Act, "a lie is actionable but not an error." *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004). According to the Fifth Circuit, liability does not attach unless "the [defendants] *knowingly* asks the Government to pay amounts it does not owe." *United States ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 381 (5th Cir. 2003) (emphasis added). The Act defines "knowing" and "knowingly" as follows:

(1) the terms "knowing" and "knowingly"—
    (A) mean that a person, with respect to information—
        (i) has actual knowledge of the information;
        (ii) acts in deliberate ignorance of the truth or falsity of the information; or
        (iii) acts in reckless disregard of the truth or falsity of the information; and
    (B) require no proof of specific intent to defraud.

31 U.S.C. § 3729(b)(1)(A)-(B). This is an elevated standard, as a finding of negligence or gross negligence is not sufficient to satisfy the scienter requirement. *United States ex rel. Farmer v. City of Houston*, 523 F.3d 333, 338 (5th Cir. 2008). "Given this definition of 'knowingly,' courts have found that the mismanagement—alone—of programs that receive federal dollars is not enough to

---

[11] In his response to Defendants' argument on this element, Relator also cited to *Universal Health Services, Inc. v. United States*, 136 S. Ct. 1989 (2016) and referenced the implied false contract theory of liability. (doc. 363 at 9-10.) "According to [the implied false certification] theory, when a defendant submits a claim, it impliedly certifies compliance with all conditions of payment. But if that claim fails to disclose the defendant's violation of a material statutory, regulatory, or contractual requirement, so the theory goes, the defendant has made a misrepresentation that renders the claim 'false or fraudulent' under § 3729(a)(1)(A)." *Id.* at 1995. The Supreme Court held that the implied false certification theory can be a basis for liability where two conditions are satisfied: "first, the claim does not merely request payment, but also makes specific representations about the goods or services provided; and second, the defendant's failure to disclose noncompliance with material statutory, regulatory, or contractual requirements makes those representations misleading half-truths." *Id.* at 2001. Relator did not appear to plead this theory in his amended complaint. (*See* docs. 89, 89-1.) Nevertheless, the theory still requires a claim for payment.

create . . . liability." *Id.* at 339; *see also Willard*, 336 F.3d at 381 (explaining that liability attaches to a false claim for payment not a defendant's disregard of regulations or improper internal policies). As a result, to survive summary judgment, a relator must raise a genuine dispute of material fact that the defendants acted with either (1) actual knowledge, (2) deliberate ignorance, or (3) reckless disregard. *United States ex rel. Johnson v. Kaner Medical Group, P.A.*, 641 F. App'x 391, 394 (5th Cir. 2016) (per curiam).

To meet their initial summary judgment burden, Defendants point to the absence of evidence that they "knowingly" made a false claim to the federal government for the payment of money. (doc. 334 at 21.) By pointing out the need for and lack of evidence for this necessary element, Defendants have met their summary judgment burden. *See Celotex*, 477 U.S. at 325. The burden then shifts to Relator to identify evidence in the record that raises a genuine issue of material fact.

In response, Relator contends that "[Wallace] and [Jones], in conspiracy with [Mays], intentionally and knowingly conspired to make and did make numerous false statements, under penalty of perjury, to place themselves in position to make claims for funding of the Summer Food Service Program, and then mismanaged said funds as evidenced by the Audit Summary (Exhibit 'D') and the Adverse Action, Exhibit ('E')." (doc. 363 at 9.) As noted, Relator generally points to these exhibits as evidence but does not specifically reference any part or explain how they support his claim. (*See* doc. 363 at 5-10); *see also Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (noting the responding party on summary judgment must "identify *specific evidence* in the record" supporting challenged claims and "articulate the *precise manne*r in which that evidence supports [those] claim[s]") (emphasis added).

Even considering Exhibits D and E, Relator still has failed to identify evidence of actual

14

knowledge, deliberate ignorance, or reckless disregard. Viewing all of the evidence in the light most favorable to Relator, he has at most presented evidence of mismanagement by some Defendants, which alone is insufficient to create liability under the Act. *Farmer*, 523 F.3d at 339. He has therefore not met his summary judgment burden to identify a genuine issue of material fact as to whether Defendants intended to make a false record or statement.

### 3. *Materiality*

Defendants next contend that, even if the 2011 and 2012 Applications were claims for payment under the Act, Relator has no evidence that any false statements in the applications were material. (doc. 334 at 20.)

The Act defines "material" to mean "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(b)(4). The Supreme Court has described the materiality requirement as "demanding," and explained that materiality "cannot be found where noncompliance is minor or insubstantial." *Universal Health Services, Inc. v. United States*, 136 S. Ct. 1989, 2003 (2016). In summarizing the determination of materiality, the Supreme Court offered the following insight:

> [I]f the Government pays a particular claim in full despite its actual knowledge that certain requirements were violated, that is very strong evidence that those requirements are not material. Or, if the Government regularly pays a particular type of claim in full despite actual knowledge that certain requirements were violated, and has signaled no change in position, that is strong evidence that the requirements are not material.

*Id.* at 2003-04; *accord Abbot*, 851 F.3d at 387-88 (quoting *Universal Health*, 136 S. Ct. at 2003-04). In the Fifth Circuit, "a false statement is material if it has a 'natural tendency to influence, or [is] capable of influencing, the decision of the decision-making body to which it was addressed.'" *Longhi*, 575 F.3d at 468 (quoting *Neder v. United States*, 527 U.S. 1, 16 (1999)).

15

Here, to meet their initial summary judgment burden, Defendants point to the absence of evidence that a false statement made to the federal government resulted in payment of money. (doc. 334 at 20.) The burden now shifts to Relator to identify evidence in the record that raises a genuine issue of material fact.

In response, Relator argues:

> The Materiality and plausibility of said Defendants false and fraudulent acts and claims is clearly established and documented by [TDA's] and the USDA's placement of Defendants: [Wallace] and [Jones], on the Texas Excluded SFSP List (TEXSL) and State list, and Exclude [Uplift], [Wallace,] and [Jones], from future [Summer Food Program] participation effective April 21, 2014. Further, [Uplift's], Food and Nutrition Division Permanent Agreement (Permanent Agreement) was terminated effective April 21, 2014.

(doc. 363 at 9.) He makes no reference to Mays. (*See id.*)

Although Relator generally references Wallace's, Jones's, and Uplift's exclusion from further participation from the Summer Food Program as evidence of materiality, the basis of their exclusion was not related to the false statements alleged by Relator. (doc. 363-2 at 39-40.)[12] For example, TDA excluded Uplift because a default was entered against it in this case. (*Id.* at 42) ("As a result of the Default, Uplift has been adjudicated to have engaged in civil violations of the False Claims Act."). The conduct identified in the letter against Wallace and Jones related to their "failure to implement a financial system based on generally acceptable accounting procedures, and failure to retain records for the required three years and to make those records available to the TDA," as required by a corrective action plan entered into after it submitted the 2011 and 2012 Applications.

---

[12]Relator does not specifically cite to Exhibit I in his response, i.e., the April 21, 2014 letter submitted with his response. (*See* doc. 363 at 9.) He sufficiently describes it such that the letter will be considered, however. *Cf. Ragas*, 136 F.3d at 458 (noting the responding party on summary judgment must "identify *specific evidence* in the record" supporting challenged claims and "articulate the *precise manner* in which that evidence supports [those] claim[s]") (emphasis added)

(*See id.* at 42-43.) He has not produced evidence or designated specific facts in the record showing the existence of a genuine issue for trial regarding materiality. (*See id.* at 8-9.) Relator has failed to meet his burden on this element, and Defendants' motion for summary judgment should be **GRANTED** on his presentment and false record theories of liability.

C. **Conspiracy**

Defendants next move for summary judgment on Relator's conspiracy claims under § 3729(a)(1)(C) on grounds that no evidence exists showing that they conspired to make false claims or committed any overt act whatsoever in furtherance of the alleged conspiracy. (doc. 334 at 21.)

Section 3729(a)(1)(C) subjects any person who "conspires to commit a violation" of a number of provisions of the Act to civil liability, including the presentment and false statement provisions. *See* 31 U.S.C. § 3729(a)(1)(A)-(C). In order to prove a conspiracy under the Act, the Fifth Circuit requires a relator to show "(1) the existence of an unlawful agreement between defendants to get a false or fraudulent claim allowed or paid by [the Government] and (2) at least one act performed in furtherance of that agreement." *Farmer*, 523 F.3d at 343. "As part of that showing, [the relator] must demonstrate that defendants 'shared a specific intent to defraud the [G]overnment.'" *Id.* (quoting *United States ex rel. Reagan v. E. Tex. Med. Ctr. Reg'l Healthcare Sys.*, 274 F. Supp. 2d 824, 857 (S.D. Tex. 2003)). Negligence, however, is insufficient. *Id.*

To meet their initial summary judgment burden, Defendants point to the absence of evidence that they conspired to make false claims or committed any overt act in furtherance of a conspiracy.[13] (doc. 334 at 21.) In pointing out the need for, and lack of evidence of these necessary elements,

---

[13] Additionally, Defendants would be entitled to summary judgment because secondary liability for conspiracy cannot exist without a viable claim under the Act. *See United States ex rel. Solomon v. Lockheed Martin Corp.*, No. 3:12-CV-4495-D, 2016 WL 7188298, at *6-7 (N.D. Tex. Dec. 12, 2016) (citing cases).

Defendants have met their summary judgment burden. *See Celotex*, 477 U.S. at 325. The burden then shifts to Relator to identify evidence in the record that raises a genuine issue of material fact.

In response, relator contends that "[Wallace] and [Jones], in conspiracy with [Mays], intentionally and knowingly conspired to make and did make numerous false statements, under penalty of perjury, to place themselves in position to make claims for funding of the Summer Food Service Program, and then mismanaged said funds as evidenced by the Audit Summary (Exhibit 'D') and the Adverse Action, Exhibit ('E')." (doc. 363 at 9.) Although Relator generally points to these exhibits as evidence, he does not specifically point to any part of the exhibits or explain how they support his claim. (*See* doc. 363 at 5-10); *see also Ragas*, 136 F.3d at 458 (noting the responding party on summary judgment must "identify *specific evidence* in the record" supporting challenged claims and "articulate the *precise manner* in which that evidence supports [those] claim[s]") (emphasis added). Nothing in the two exhibits evinces the existence of an unlawful agreement between defendants to get a false or fraudulent claim allowed or paid by the Government, or at least one act performed in furtherance of that agreement. Accordingly, Relator has not met his summary judgment burden to identify evidence of record creating a genuine issue of material fact as to whether Defendants conspired to present false claims. Defendants' motion for summary judgment on Relator's conspiracy claim should therefore be **GRANTED**.

### IV. RECOMMENDATION

Defendants' motion for summary judgment should be **GRANTED**.[14]

---

[14]In their motion for summary judgment, Defendants generally request that they be awarded attorneys' fees and costs. (doc. 333 at 2.) Section 3730(d)(4) of the Act provides reasonable attorneys' fees to a prevailing defendant in a *qui tam* action if the court "finds that the claim of the person bringing the action was clearly frivolous, clearly vexatious, or brought primarily for purposes of harassment." 31 U.S.C. § 3730(d)(4); *see United States ex rel, Bain Georgia Gulf Corp.*, 208 F. App'x 280, 283 (5th Cir. 2006) (per curiam) (considering the award of attorneys' fees to a prevailing defendant in a *qui tam* action). To the extent that Defendants seek attorneys' fees, they may file motions that

**SO RECOMMENDED** on this 15th day of September, 2017.

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

  A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

---

state the legal basis for their request and provide evidentiary support.